**ALPHA TAU OMEGA FRATERNITY,**
An Unincorporated Association, Alpha Tau Omega, Inc., A Maryland Corporation, Delta Delta Delta Sorority, and Unincorporated Association, Delta Delta Delta, An Illinois Not–For–Profit Corporation, Delta Tau Delta Fraternity, An Unincorporated Association, Delta Tau Delta Corporation, A New York Corporation, Kappa Sigma Fraternity, An Unincorporated Association, Sigma Nu Fraternity, An Unincorporated Association, Sigma Nu Fraternity, Inc., An Indiana Corporation, Sigma Phi Epsilon Fraternity, An Unincorporated Association, And Sigma Phi Epsilon, A Virginia Corporation, Plaintiffs,

v.

**PURE COUNTRY, INC., Margaret W. Clark, Jay Clark, IV, and Hays Clark., Defendants.**

**CAUSE NO. IP 01–1054–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 24, 2002.

T. Caice Lee, Stites & Harbison, Jeffersonville, IN, Jack A Wheat, Stites & Harbison, Louisville, KY, for plaintiffs.

Christian P. Jones, Barnes & Thornburg, Indianapolis, IN, for defendants.

ENTRY ON DEFENDANTS' MOTION TO STAY DETERMINATION OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE

BARKER, District Judge.

## I. *Introduction*

The plaintiffs, a sorority and several fraternal organizations (known collectively here as "the Greek Organizations" or "the Greeks") have filed a complaint against the defendants alleging that the defendants have violated the Lanham Act, 15 U.S.C. §§ 1051 et seq. and Indiana common law. They allege, more specifically, that the defendants have infringed their protected trademarks, diluted their protected trademarks, and engaged in unfair competition in violation of the federal statute. And they allege that defendant Pure Country has breached an enforceable agreement with the plaintiffs and engaged in unfair competition in violation of Indiana law. The plaintiffs have filed a motion for preliminary injunction asking us to stop the

defendants from engaging in their allegedly unlawful conduct.

In response, the defendants have filed two motions: one asks us to dismiss the plaintiffs' complaint because this court lacks personal jurisdiction over three of the individually-named defendants and because venue is improper in this court, or, in the alternative, to transfer the case to the Western District of Missouri; the second motion asks us to stay our determination of plaintiffs' motion for preliminary injunction pending our resolution of defendants' motion to dismiss or, alternatively, to transfer.

The parties' submissions on the key issues of personal jurisdiction and venue are surprisingly perfunctory, generating more heat than light. Still, since defendants' motion to dismiss or transfer is based in relevant part on personal jurisdiction, we GRANT defendants' motion to stay determination of plaintiffs' preliminary injunction motion in order to resolve defendants' motion to dismiss or, alternatively, to transfer, which we do here.

After dodging the parties' pot-shots at one another and moving to their (sparse) presentations on the merits, we GRANT defendants' motion to dismiss the individually-named defendants for lack of personal jurisdiction. We DENY defendants' motion to dismiss the case for improper venue and we DENY defendants' motion to transfer the case to the Western District of Missouri. Finally, we ORDER the parties—now consisting of all plaintiffs and Pure Country as the lone defendant—to appear for a hearing on plaintiffs' motion for preliminary injunction on March 13, 2002.

We further note that in entering this order, we are relying on the affidavit statements of Pure Country's President, Margaret Clark, Pure Country's Vice President, Jay Clark IV, and Pure Country's Secretary and Treasurer, Hays Clark, that: "Pure Country does not sell any Greek merchandise associated with the plaintiffs in this action, nor will it do so again while this suit and the related suit pending in Kansas City are pending." Margaret Clark Aff., ¶ 10; Jay Clark, IV, Aff., ¶ 10; Hays Clark Aff., ¶ 10.

## II. *Background.*

The Greek Organizations have chapters on many of the nation's campuses. Pure Country is a vendor of goods (blankets, clothing, and other products) that bear the Greek letters and insignias of the Greek Organizations. The individually-named defendants (referred to collectively as the Clarks) are the officers of Pure Country. According to affidavits filed by each in support of defendants' motion to dismiss or transfer, Margaret Clark is the president of Pure Country, Jay Clark, IV is its vice president, and Hays Clark is its secretary-treasurer.

The Greek Organizations seek an injunction to prevent Pure Country and the Clarks from selling goods that bear their Greek letters, logos, or insignias without first obtaining a license. Pure Country operated for many years without a license and without the threat of a lawsuit. But a few years ago, the Greeks determined that they had a financial interest in their names and insignias and began asserting their right to license any use of their names and logos. They have licensed their names and logos through their agent, Affinity Marketing. The Complaint alleges that the names are protected by trademarks and plaintiffs provide supporting documentation to that effect.

In 1998, Pure Country entered into a licensing agreement with the plaintiffs. Pure Country asserts that it subsequently learned that some of the Greeks did not have valid trademarks and decided that they did not have the right to demand licenses. Accordingly, at the expiration of

its license agreement, it began to operate without benefit of licenses.

This case is paralleled by another one. On March 23, 2001, Pure Country filed a lawsuit against Sigma Chi in the district court for the Western District of Missouri. Pure Country's Kansas City lawsuit seeks to enforce a 1969 consent decree of that court in which Sigma Chi agreed not to sue any vendor or manufacturer of goods containing its insignias for infringement of trademark or unfair competition. In its Kansas City lawsuit, Pure County also seeks a declaration that it does not need a license to produce and sell goods bearing Sigma Chi's letters or logos. Sigma Chi is not a party to the Indiana lawsuit, but, like the plaintiffs here, it is represented by Affinity Marketing, and Pure Country entered into a license agreement with Sigma Chi that is substantially identical to the license agreements that Pure Country had entered with the plaintiffs here.

On July 3, 2001, the plaintiffs filed their complaint in this district.[1] On August 30, 2001, they filed their motion for preliminary injunction. Meanwhile, Pure Country has asked the Missouri court for leave to amend its complaint to name the plaintiffs *here* as defendants *there*. It appears from Defendants' Exhibit B that, as originally filed (and as matters currently stand), the sole plaintiff in the Missouri case is Pure Country, Inc. d/b/a Pure Country Weavers and the sole defendants in that case are Sigma Chi Fraternity and Sigma Chi Corporation. As we have noted, Sigma Chi is not a plaintiff here.

Pure Country and the individual defendants ask us to dismiss the lawsuit here or transfer it to the Western District of Missouri. They allege two bases for their motion to dismiss: this court lacks personal jurisdiction over the Clarks; and venue in this court is improper. In the alternative, they ask us to transfer the case to Kansas City on the grounds that the Kansas City case was "first filed" and/or because attorney Jack Wheat of Louisville, Kentucky is counsel for defendant Sigma Chi in the Kansas City lawsuit as well as counsel for the plaintiffs in this matter and Mr. Wheat seeks to use the Indiana forum because it is closer to home.

## III. *Discussion.*

### A. *Personal Jurisdiction.*

■ Defendants have asked us to stay consideration of plaintiffs' motion for preliminary injunction because we do not have personal jurisdiction over the individual defendants and because venue is improper in this court. We grant their motion to stay consideration because, if they are correct that this court lacks personal jurisdiction over the Clarks, we cannot enter an injunction against them. *U.S. v. First Nat. City Bank,* 379 U.S. 378, 390, 85 S.Ct. 528, 534–535, 13 L.Ed.2d 365 (1965) ("traditional notions of equity" require likelihood of personal jurisdiction before an injunction may issue); *General Electric Co. v. Deutz Ag,* 270 F.3d 144, 149 (3rd Cir. 2001) ("If [personal] jurisdiction does not exist, then the District Court necessarily lacked the power to issue the injunction."); *In re Rationis Enterprises, Inc. of Panama,* 261 F.3d 264, 270 (2nd Cir.2001) (same). Accordingly, we first determine whether we have personal jurisdiction over *the Clarks,* since defendants present neither argument nor evidence for the proposition that we do not have personal jurisdiction over the corporate defendant, Pure Country.

■ In federal question cases such as this one, the law governing personal juris-

---

1. The lawsuit was filed in New Albany. It was transferred to the Indianapolis division on July 19, 2001.

diction parallels the rules governing service of process. If the federal statute at issue does not prescribe nationwide service of process, then personal jurisdiction exists in the district in which the court has power to enforce process. Thus "a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service." *Swaim v. Moltan Co.*, 73 F.3d 711, 719–720 (7th Cir.1996), *quoting Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987). As to this case, the Lanham Act does not prescribe nationwide service of process. *Euromarket Designs, Inc. v. Crate & Barrel Limited*, 96 F.Supp.2d 824, 834 (N.D.Ill.2000). It follows that we have personal jurisdiction over the Clarks only if they would be amenable to process under Indiana law. We conclude that they would not be.

 Personal jurisdiction under Indiana's long arm statute, Indiana Trial Rule 4(A), may be either "general" or "particular." *Tom–Wat, Inc. v. Fink*, 741 N.E.2d 343, (Ind.2001). Both forms of personal jurisdiction refer to the nature of the contacts between the defendant and the forum state. General jurisdiction is present where the defendant has "continuous and systematic contacts with the forum state such that the defendant could reasonably foresee being haled into court in that state for any matter." *Anthem Insurance Companies v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1234 (Ind.2000). *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In order to determine whether general jurisdiction is present under Indiana law, we consider such factors as: whether the defendant has conducted direct advertising and solicitation of Indiana residents; whether the defendant has offices in Indiana; whether it employs employees in

Indiana; whether it has agents in Indiana; and whether it owns property in Indiana. *Anthem Insurance*, 730 N.E.2d at 1234, *citing North Texas Steel Co. v. R.R. Donnelley & Sons Co.*, 679 N.E.2d 513, 519 (Ind.Ct.App.1997), *transfer denied.* "In sum," held the Indiana Supreme Court:

an Indiana court has general jurisdiction over a defendant if the defendant's contacts with Indiana are substantial, continuous, extensive, and systematic, which Indiana courts have interpreted to include, among other things, having offices in Indiana, being incorporated in Indiana, and having employees in Indiana.

*Id.* at 1235.

 By contrast, particular jurisdiction arises where the defendant has sufficient minimum contacts with the forum state such that the court may hear a case whose facts arise from those minimum contacts. A defendant's isolated contacts with Indiana may be insufficient to establish an Indiana court's *general* personal jurisdiction over it, but sufficient to establish the court's *particular* personal jurisdiction. *Id.* at 1235. Crucially, however, to show particular jurisdiction over a defendant, the defendant must have purposefully established contacts with Indiana and the lawsuit must be incident to that contact. *Id. See, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although a single act may constitute a basis for personal jurisdiction, the act must be purposeful and create a "substantial contact," and not merely a "random, fortuitous, or attenuated contact" or "the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174, 85 L.Ed.2d 528.

With these principles in mind, we conclude that personal jurisdiction over the Clarks does not exist in this district. The

plaintiffs do not claim that the Clarks have had the kind of "substantial, continuous, extensive, and systematic" contacts that would establish general personal jurisdiction. Instead, they merely allege that the Clarks benefitted from their business relationship with Pure Country. It follows that they must show that the Clarks's individual contacts with Indiana were sufficient to establish particular personal jurisdiction. The evidence is to the contrary. Margaret Clark, Jay Clark, IV, and Hays Clark have filed affidavits each stating that he or she does not and has not: owned any real or personal property in Indiana; personally transacted any business in Indiana; traveled to Indiana for any business purpose; sold any product in Indiana; or advertised in Indiana; all aver that they never anticipated being sued in Indiana. Jay Clark, IV testified that he was in Indiana more than ten years ago when he visited a race track. Jay Clark Aff., ¶ 5. Hays Clark testified that he was in Indiana in or about 1991 for a concert. Hays Clark Aff., ¶ 5. In sum, each affiant has testified that he or she has had no business contact with Indiana and none but the most attenuated personal contact with the State.

 Plaintiffs do not challenge these assertions. These unrebutted sworn statements are sufficient to show that the Clarks have not had sufficient minimum contacts to establish particular jurisdiction. Accordingly, we need not address the question of whether exercising personal jurisdiction over the Clarks would comport with the requirements of due process. *Burger King Corp. v. Rudzewicz*, 471 U.S.

at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *IDS Life Insurance Company v. SunAmerica Life Insurance Company*, 136 F.3d 537, 540 (7th Cir.1998) Since we do not have personal jurisdiction over the Clarks, they are dismissed from this lawsuit.[2]

As previously noted, defendants do not assert that we lack personal jurisdiction over the corporate defendant Pure Country. Accordingly, Pure Country has waived that argument. *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1399 (7th Cir.1993). Additionally, plaintiffs have sufficiently alleged that "Defendants do business nationwide, including in Indiana and in this District, and the infringing acts by Defendants were directed at Plaintiff Alpha Tau Omega Fraternity and Alpha Tau Omega Fraternity, Inc., in this District." Complaint ¶ 3. We find this sufficient to establish personal jurisdiction over Pure Country, especially in view of Pure Country's failure to rebut these facts.

B. *Venue.*

 Defendants ask us either to dismiss this case for improper venue or to transfer it to the Western District of Missouri where their case against Sigma Chi is pending. They ask us to dismiss because the Southern District of Indiana is not a proper venue under the general venue statute, 28 U.S.C. § 1391. And they ask us to transfer the case to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a) because Pure Country's case was

---

**2.** Under Indiana law, personal jurisdiction is an affirmative defense which places the burden of persuasion on the defendant to show that the court lacks jurisdiction. *Anthem Insurance*, 730 N.E.2d at 1231. Particularly in view of plaintiffs' failure to rebut defendants' statements, defendants have sustained that burden. Personal jurisdiction is also an affir-

mative defense under federal law. But under federal law the plaintiffs bear the ultimate burden of persuasion to show that jurisdiction exists. Plaintiffs have not sustained that burden with respect to the Clarks. *See Sumpter v. American Tobacco Co.*, 2000 WL 1449851 (S.D.Ind.2000).

first filed there and because plaintiffs' counsel is forum shopping.

As to the propriety of venue in this district, defendants have completely ignored 28 U.S.C. § 1391(c) and the interplay between that section and sub-sections § 1391(b)(1) and (2). It has also ignored the extensive case law and commentary devoted to that subject. *See, e.g., Wright & Miller, Federal Practice & Procedure: Civil* § 3811. In its brief recitation as to why § 1391(a), (b), (d), and (e) would *not* properly place venue in this court, defendants managed to omit § 1391(c), which provides:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

It would seem reasonably clear on the face of this provision that Pure Country agreed to venue by waiving any objection to personal jurisdiction. In other words, it appears to be a corporate defendant that was subject to personal jurisdiction in the Southern District of Indiana at the time the action was commenced. *See Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1203 (7th Cir.1997); *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206, 1210 n. 3 (10th Cir.2000);[3] *WellQuest Intern., Inc. v. Genesis Intermediacom, Inc.,* 2001 WL 1246592, *2–*3 (S.D.N.Y.2001).

Moreover, defendants argued that the Clarks should be dismissed for lack of personal jurisdiction. In view of the fact that we are dismissing the Clarks, it appears that venue with respect to Pure Country is proper in the Southern District of Indiana pursuant to § 1391(b)(1) and (c). Since Pure Country is the lone remaining defendant and since we have personal jurisdiction over it (by virtue of waiver, if for no other reason), then venue appears to be proper in this district. In addition, plaintiffs *unrebutted* allegations that Pure Country "does business" in this district and that the plaintiffs have suffered injury here serve as a bare-bones showing of venue as well as of personal jurisdiction, whose provisions often overlap.

Plaintiffs have not helped their cause by stating, simply: "venue does not appear to be a problem," and by citing one case for that proposition. Pl. Opp., p. 2. Still, defendants have not adequately contested the propriety of venue and there is nothing on the face of the complaint to indicate that venue is improper. Accordingly, we DENY defendants' motion to dismiss on the basis that venue in this court is not proper.

 In addition we DENY defendants' motion to transfer this case to the Western District of Missouri pursuant to 28 U.S.C. § 1404. As a threshold matter, in order to transfer venue to *another* court, venue must first be proper in *this* court. *Coffey v. VanDorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986) ("A federal district court, *in*

---

3. The Seventh Circuit has expressly disagreed with the *Peay* decision, but *not* as to the applicability of section 1391(c) in federal question cases in which the statute does not provide nationwide service of process. *Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1036 (7th Cir.2000).

*which a suit is filed with proper venue, may ... transfer...."* [Emphasis added.]). Since we have found that venue properly lies here, we move on to determine whether to transfer this case.[4]

■ Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under this circuit's well-established guidelines, a party moving for transfer bears the burden of showing not merely that transfer would be more convenient, but *"clearly* more convenient." *Coffey,* 796 F.2d at 219–20; *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989). In determining whether a transfer would be clearly more convenient, we look to several factors under the three general headings contained in section 1404(a): the convenience of the parties; the convenience of the witnesses; and the interests of justice. *See, e.g., Aearo Co. v. Sungard Recovery Services Inc.,* 2001 WL 619415, \*2 (S.D.Ind. 2001); *Somers v. Flash Technology Corp. of America,* 2000 WL 1280314 (S.D.Ind. 2000); *Information Technologies Intern., Inc.,* 2001 WL 1516750, \*9 (N.D.Ill.2001) (and cases cited there).

We conduct no analysis pursuant to these criteria because defendants have not so much as alleged that a transfer of this case to Kansas City would be more convenient, much less adduced evidence tending to show that it would be clearly more convenient. Accordingly, defendants have not sustained their burden of showing that a transfer is warranted.

■ Instead, defendants argue for transfer on the ground that Pure Country's Missouri lawsuit was "first filed."

Even if that were true, that would merely present us with one consideration, in view of the Seventh Circuit's statement that it is not wedded to a first filed presumption. *Trippe Mfg. Co. v. American Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir. 1995) ("This circuit does not rigidly adhere to a 'first-to-file' rule"). Moreover, to the extent that we recognize such a presumption, we require the first-filed and the later suits to be between *the same parties.* See Wright & Miller, *Federal Practice & Procedure: Civil* § 2384 ("When an action for declaratory relief is filed to determine a central issue of an already pending lawsuit *between the same parties,* consolidation is appropriate." [Emphasis added.] ); *Miller Brewing Co. v. Meal Co., Ltd.,* 177 F.R.D. 642, 645 (E.D.Wis., 1998).

The Kansas City suit is between Pure Country and Sigma Chi. None of the plaintiffs here is a party there. Nor is Sigma Chi a party here. That is because, contrary to Pure Country's representation to this court that it has "filed" an amended complaint in Kansas City naming the plaintiffs here as defendants there, to date Pure Country has merely asked for leave to file an amended complaint in Kansas City. Since their request has not (yet) been granted, they have not yet actually "filed" an amended complaint, so that the Kansas City lawsuit involves only one defendant, Sigma Chi, which, as we have noted, is not a plaintiff here. It follows that, while the issues in the two suits appear to be similar and the party alignments appear to be parallel, the two lawsuits are not between the same parties. It further follows that the Missouri case was not "first filed."

As to Mr. Wheat's participation as counsel for defendant Sigma Chi in Kansas City and for the plaintiffs here, the conve-

---

4. Where venue does *not* properly lie in the district in which the case is filed, a defendant may seek transfer pursuant to 28 U.S.C.

§ 1406. *See Willis v. Caterpillar Inc.,* 199 F.3d 902, 905 (7th Cir.1999).

nience of counsel is merely one factor, and that not a momentous one, in determining whether to transfer a case pursuant to section 1404(a). *See, e.g. Banjo Buddies, Inc. v. Renosky,* 156 F.Supp.2d 22, 26 (D.Me., 2001); *Johnson v. Dillard Dep't Stores, Inc.,* 2001 WL 285248, at *1–3 (N.D.Tex.2001). We long ago ceased to be amazed or particularly offended by the fact that parties forum shop.

### IV. *Conclusion.*

For the reasons addressed, we: GRANT defendants' motion to stay consideration of plaintiffs' motion for preliminary injunction; we GRANT defendants' motion to dismiss the Clarks for lack of personal jurisdiction; we DENY defendants' motion to dismiss the case for improper venue; and we DENY defendants' motion to transfer the case to the Western District of Missouri.

In view of Pure Country's statement, through the sworn declarations of its President, Vice President, and Secretary Treasurer that Pure Country is not selling any Greek merchandise associated with the plaintiffs and will not during the pendency of the proceedings here and in Kansas City, we are puzzled as to why the plaintiffs still seek an injunction. They appear to have one voluntarily self-imposed. Nevertheless, we are constrained by rule to proceed with an injunction hearing unless and until notified by the parties that an injunction has become moot or otherwise unnecessary. Accordingly, we ORDER the parties-now consisting of all plaintiffs and Pure Country as the lone defendant-to appear for an evidentiary hearing on plaintiffs' motion for preliminary injunction on March 13, 2002 at 2:00 p.m. in Room 216 of the United States Courthouse in Indianapolis. Counsel are advised to serve on one another and file with the court their wit-

ness and exhibit lists no later than March 4, 2002.